**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**STATE OF NEW MEXICO ex rel
GARY K. KING, Attorney General**,

      Plaintiff,

      vs.                                  No. 08cv856 MCA/LAM

**NATIVE WHOLESALE SUPPLY
COMPANY, a corporation, Does 1 through 25
Inclusive,**

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on *Plaintiff State of New Mexico ex rel. Gary K. King's Motion to Remand to State Court* [Doc. 8], filed October 15, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion.

**I. BACKGROUND**

On August 12, 2008, the State of New Mexico, through Attorney General Gary King, ("the State") filed its *Complaint for Injunctive Relief, Civil Penalties, Contempt and Other Relief* against Defendant Native Wholesale Supply Company ("Native Wholesale") in the First Judicial District Court, County of Santa Fe, State of New Mexico. Native Wholesale is a corporation chartered by the Sax and Fox Tribe of Oklahoma, with its sole office located on the Seneca Nation of Indians Territory in northern New York.

Native Wholesale is in the business of selling tobacco products, and imports cigarettes manufactured by Grand River Enterprises Six Nations, Inc. ("Grand River") for resale to third parties. Grand River is a Canadian corporation that is wholly owned by Native Americans who are members of the First Nations that comprise the Iroquois Confederacy. Grand River produces, packages, and sells tobacco products from its facility on the Grand River Reserve in Oshweken, Ontario, Canada.

Through its Complaint, the State seeks "disgorgement and payment . . . of the gross proceeds realized by Native Wholesale . . . from cigarette sales it made in violation of the New Mexico Master Settlement Agreement Tobacco Escrow Fund Act . . . NMSA 1978 §§ 6-4-14 through 6-4-24." [Doc. 1; attached Complaint at 1]. The State alleges that, since at least January 2004, Native Wholesale has been selling tens of millions of Seneca and Opal brand cigarettes to businesses within New Mexico. Such sales are illegal, contends the State, because neither these brands of cigarette, nor their manufacturer, Grand River, has ever been listed in the State's Tobacco Directory. As the State points out, "[s]ince April 2, 2003, no one may lawfully sell cigarettes in New Mexico unless both the brand and the manufacturer are listed on the Directory, which the Attorney General maintains, based upon whether the manufacturer is in compliance with state financial responsibility laws." [Id., attached Complaint at 2].

The State further contends that Native Wholesale is in violation of the laws of New Mexico by virtue of "shipping cigarettes to persons or entities in New Mexico that are not licensed as cigarette distributors by the New Mexico Department of Taxation and Revenue

and by failing to report such shipments to the Department as required by state law[,]" and that Native Wholesale's actions constitute unfair trade practices in violation of NMSA 1978 § 57-2A-4 and 57-2A-5. [Doc. 1; attached Complaint at 2]. Finally, the State alleges that, in addition to selling cigarettes to distributors conducting business on reservation land, Native Wholesale also sells cigarettes to at least one distributor who conducts business in the City of Albuquerque, and that Native Wholesale knows or should know that all of its distributors are selling or offering for sale cigarettes to non-Indians. [Id.; attached Complaint at 6].

On September 19, 2008, Native Wholesale timely removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. [See Doc. 1 at 1]. In support of its position that removal is appropriate under the circumstances, Native Wholesale asserts that

> [t]his Court would have had original jurisdiction of this action as the State of New Mexico's allegations implicate federal law. Hence, the Complaint implicates the Commerce Clause of the United States Constitution as it raises issues regarding the regulation of an out of state business (including the extraterritorial application of state law) and the Indian Commerce Clause. Therefore, the claims in the Complaint necessarily involve the Constitution of the United States and questions of federal law, including sovereign immunity. Specifically, this Complaint is the subject to the complete preemption doctrine, as federal law has completely preempted the field of Indian Commerce and Indian Affairs.

[Id. at 3].

The State now seeks to remand the matter to state court on grounds that (1) no federal question is raised in the Complaint; (2) to the extent a federal question exists at all, it is

3

because Native Wholesale has raised a federal defense; (3) the assertion of a federal defense is insufficient to invoke federal jurisdiction; and (4) the rule of "complete preemption" does not apply here. [See generally Doc. 9 at 6].

Native Wholesale disputes that the sole basis for removal is its assertion of a federal defense, explaining instead that what the State is trying to do is "regulate commerce between Native Americans that is limited to tribal lands[,]" which states lack the power to do. [See Doc. 19 at 2]. It is this attempt, argues Native Wholesale, that implicates both the Commerce Clause and the Indian Commerce Clause. [See id. at 7].

## II. ANALYSIS

Pursuant to § 1331 of Title 28 of the United States Code, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1441 provides, in pertinent part, that

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). The party asserting federal jurisdiction bears the burden of establishing its existence, see Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974), and a matter "shall" be remanded "[i]f at any time . . . it appears that the district court lacks subject matter jurisdiction," 28 U.S.C. § 1447(c); see also Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991) ("Since federal courts are courts of limited jurisdiction, there is a presumption against [their] jurisdiction, and the party

invoking federal jurisdiction bears the burden of proof.").

In deciding whether an action arises under federal law, this Court is "guided generally by the 'well-pleaded complaint' rule, under which a suit arises under federal law 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law." Schmeling v. NORDAM, 97 F.3d 1336, 1339 (10th Cir. 1996) (*quoting* Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152 (1908)).  The United States Supreme Court has held that "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint. . . ."  Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) (emphasis in original).

The "well-pleaded complaint" rule makes the plaintiff the master of his or her claim, meaning that the plaintiff may avoid federal jurisdiction by exclusive reliance on state law. Caterpillar, 482 U.S. at 392.  On the other hand, even a plaintiff's "artful pleading" will not defeat removal when non-pleaded federal questions are essential elements of the claim.  See Turgeau v. Admin. Review Bd., 446 F.3d 1052, 1061 (10th Cir. 2006).  Hence the doctrine of "complete preemption," which the Tenth Circuit has summarized as "a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal."[1]  Schmeling, 97 F.3d at 1342.  In other words, there

---

[1] The Tenth Circuit's definition combines one approach, under which courts focus on the merits of a preemption defense and the degree to which federal law preempts state law without considering whether federal law provides a cause of action, with a second approach, whereby

are some areas of the law "that Congress [has] so completely pre-empt[ed] . . . that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987) (noting inclusion in "this select group" of claims arising under § 301 of the Labor Management Relations Act). In such situations, "not only is the state-law claim preempted, it becomes a federal claim and can be the basis for removal jurisdiction." David P. Coldesina, D.D.S. v. Estate of Simper, 407 F.3d 1126, 1137 (10th Cir. 2005) (benefit plan's vicarious-liability claim against accountants and estate of plan's investment advisor was completely preempted by ERISA).

The "well-pleaded complaint" rule and the corollary "complete preemption" doctrine also have been applied in the specific situation where states have sued Indian tribes to recover unpaid taxes. In Oklahoma Tax Comm'n v. Graham, the Supreme Court held that an action brought by the State of Oklahoma to collect unpaid state excise taxes on the sale of cigarettes at, and taxes on receipts from bingo games held in, a motor lodge owned by the Chickasaw Nation was not removable to federal court where only state-law claims were pled in the complaint, notwithstanding that a tribal-immunity defense might have defeated the State's claims. Oklahoma Tax Comm'n v. Graham, 489 U.S. 838, 840-841 (1989). As the Court explained, "it has long been settled that the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law." Id. at 841.

---

courts permit removal only if congressional intent to allow removal is manifested by the replacement of the state law cause of action with a federal cause of action. Schmeling, 97 F.3d at 1342.

A similar result obtained in State of Okl. ex rel. Oklahoma Tax Comm'n v. Wyandotte Tribe of Oklahoma, where the State of Oklahoma filed suit in state court to enjoin the Wyandotte Tribe from operating a convenience store that the tribe owned and that was located on tribal property until the tribe collected and paid all applicable state taxes. State of Okl. ex rel. Oklahoma Tax Comm'n v. Wyandotte Tribe of Oklahoma, 919 F.2d 1449, 1449 (10th Cir. 1990). Relying on Graham, the Tenth Circuit reversed the district court's denial of the State's motion to remand, holding that, absent any issue of federal law other than sovereign immunity that would have to be resolved in order to decide the parties' dispute, removal to federal court was improper. Id. at 1451.

Turning now to the facts of this case, Native Wholesale asserts that it "purchases and imports cigarettes from Grand River, and then resells only to tribes or entities in the United States that are located on tribal land and owned by the tribes or Native Americans." [Doc. 19 at 3]. Native Wholesale further contends, *inter alia*, that (1) all orders are placed and processed at—and all payments remitted to—its only office, which is located on the Seneca Nation of Indians Territory in northern New York; (2) all cigarettes are sold F.O.B. Seneca Nation of Indians Territory, meaning that title and risk transfer to the buyer at the time of sale and delivery from either the Western New York or the Southern Nevada Foreign Trade Zones, or a warehouse on the Seneca Nation of Indians Territory;[2] and (3) the packages for

---

[2] See U.C.C. § 2-319 (explaining that "F.O.B.," which means "free on board," is a delivery term, and that "when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this Article (Section 2-504) and bear the expense and risk of putting them into the possession of the carrier."); see also U.S. v. Funds From First Regional Bank Account No. XXXXX1859 Held in Name of R K Co., Inc., 2009 WL 667188, at

all cigarettes sold by Native Wholesale are stamped "for reservation sales only." [Id. at 3-4]. Thus, Native Wholesale argues that, through its Complaint, the State is attempting to "regulate economic activity that is limited to Native Americans and which takes place on-reservation[,]" in contravention of repeated Supreme Court pronouncements that states may not so regulate. [See id. at 6-7]. Accordingly, explains Native Wholesale, the State's Complaint "raises an obvious federal question that implicates the Indian Commerce Clause (and the Commerce Clause) and transforms the State's state court claims into federal claims." [Id. at 7]. For this reason, Native Wholesale submits that complete preemption applies and removal was appropriate. [See id. at 9].

The actual allegations of the Complaint, however, are not as Native Wholesale makes them out to be and, therefore, do not support Native Wholesale's position that the State is attempting to regulate economic activity limited to Native Americans on reservations. To the contrary, the State alleges that, in addition to shipping or causing to be shipped unlisted cigarette brands to unlicensed distributors conducting business on reservation land, Native Wholesale has done likewise with respect to one of its distributors conducting business in the City of Albuquerque. The State further alleges that Native Wholesale knows or should know that its distributors, including those conducting business on reservation land, sell and offer for sale unlisted cigarettes to non-Indians. [See Doc. 1; attached Complaint at 6].

---

*8 n.4 (W.D. Wash. March 11, 2009) ("When the term is FOB place of shipment, the seller must 'bear the expense and risk of putting them into the possession of the carrier. . . .'").

Through these actions, says the State, Native Wholesale has violated, and continues to violate: (1) New Mexico tobacco statutes "prohibit[ing] any person from selling cigarettes or offering cigarettes for sale in New Mexico unless both the manufacturer and the cigarette brand meet the conditions for listing on the [New Mexico tobacco] directory, and in fact, are listed on the directory at the time they are sold or offered for sale[;]" and (2) the New Mexico Unfair Trade Practices Act, by failing to file monthly reports of all stamped cigarettes sold, in accordance with the New Mexico Cigarette Tax Act. [Doc. 1; attached Complaint at 7-8]. The State's "Prayer for Relief" includes, but is not limited to, recovery of all "profit, gain, gross receipts or other benefit [Native Wholesale] received from all . . . cigarettes it sold within the State of New Mexico since July 31, 2004 in violation of the Tobacco Escrow Fund Act;" as well as the imposition of all "fines and penalties allowed pursuant to the New Mexico Escrow Fund Act, [t]he Cigarette Tax Act, the Cigarette Enforcement Act and the Unfair Trade Practices Act." [Doc. 1; attached Complaint at 11].

The State's Complaint asserts exclusively state-law claims and seeks to recover taxes and other monies owed as a result of Native Wholesale's allegedly unlawful acts.[3] Although

---

[3] The State contends that

> [s]ince at least January 2004, NWS has been violating New Mexico state law by shipping cigarettes to persons or businesses in New Mexico that are not licensed as cigarette distributors by the New Mexico Department of Taxation and Revenue and by failing to report such shipments to the Department as required by New Mexico state law. . . .

[Doc. 9 at 4].

9

Native Wholesale argues that the State is attempting to regulate economic activity limited to Native Americans that is taking place on-reservation and that such an attempt to regulate "raises an obvious federal question that implicates the Indian Commerce Clause (and the Commerce Clause) and transforms the State's state court claims into federal claims[,]" see Doc. 19 at 7, this Court is not persuaded that Native Wholesale's characterization of the allegations set forth in the Complaint is a fair one.

As already explained, the State is invoking only state law to disgorge profits that it alleges were earned by, among other acts, Native Wholesale's sale of unlisted cigarettes on lands *other than* the reservations and to buyers *other than* Native Americans. [See Doc. 1; attached Complaint at 6 (alleging that at least one of Native Wholesale's distributors has conducted business in the City of Albuquerque and that Native Wholesale know or should know that its distributors sell and offer for sale cigarettes to Non-Indians). The assertion that the State is seeking to "regulate economic activity that is limited to Native Americans and which takes place on-reservation [such that the allegations set forth in the Complaint] raise[] an obvious federal question that implicates the Indian Commerce Clause (and the Commerce Clause) and transforms the State's state court claims into federal claims" is the thrust of Native Wholesale's defense. However, "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption. . . ." Caterpillar Inc., 482 U.S. at 393 (emphasis in original). Accordingly, removal was not proper here, this Court lacks subject matter jurisdiction, and the matter must be remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico.

## III. CONCLUSION

For the reasons set forth more fully above, the Court concludes that it lacks subject matter jurisdiction over this matter, which was improperly removed from state court. The Court will therefore grant the State's motion to remand, and the matter will be remanded, pursuant to 28 U.S.C. § 1447(c), to the First Judicial District Court, County of Santa Fe, State of New Mexico.

**IT IS, THEREFORE, ORDERED** that *Plaintiff State of New Mexico ex rel. Gary K. King's Motion to Remand to State Court* [Doc. 8] is **GRANTED**;

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1447(c), this matter be and hereby is **REMANDED** to the First Judicial District Court, County of Santa Fe, State of New Mexico.

**SO ORDERED** this 31st day of March, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge